IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRANSTAR INDUSTRIES, LLC, | ) | CASE NO. 1:20-CV-02223 |
| | ) | |
| Plaintiff, | ) | JUDGE: JAMES S. GWIN |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE THOMAS M. |
| | ) | PARKER |
| | ) | |
| TIM LUNDQUIST, et al, | ) | **DEFENDANTS' BRIEF IN** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| Defendants. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| | ) | |
| | ) | |

Now come Defendants, Tim Lundquist ("**Lundquist**") and Dynotec Industries ("**Dynotec**")(collectively with Lundquist, "**Defendants**"), by and through the undersigned counsel, and submit their Brief in Opposition to the Plaintiff's Motion for Summary Judgment ("**Plaintiff's Motion**"). As shown below, genuine issues of material fact exist and the Plaintiff is not entitled to judgment as a matter of law. The argument in support of this Brief is more fully set forth in the Memorandum of Law below and the Declarations of Tim Lundquist ("**Tim Decl.**"), and Jody Lundquist ("**Jody Decl.**").

Respectfully Submitted,

*/s/ Brian F. Kampman*
STEPHEN M. BALES (0003380)
BRIAN F. KAMPMAN (0092386)
Ziegler Metzger LLP
1111 Superior Avenue, Suite 1000
Cleveland, OH 44114
(216) 781-5470 | (216) 781-0714
sbales@zieglermetzger.com
bkampman@zieglermetzger.com
*Attorneys for Defendants,*
*Tim Lundquist and Dynotec Industries*

-1-

## MEMORANDUM OF LAW

### I. SUMMARY OF ARGUMENT

Transtar Industries, LLC ("**Transtar**") alleges that Dynotec owes a debt in excess of one million dollars. Transtar fails, however, to account for amounts that it owes Dynotec arising from the same series of transactions. Throughout its relationship with Dynotec, Transtar provided defective products; failed and/or refused to honor its express and implied warranties on parts; failed to properly process core charges; and miscalculated the amounts charged to Dynotec. When properly calculating the amounts due between the parties, Transtar's claim against Dynotec is substantially reduced, if not eliminated entirely. The parties dispute the amount owed to each for the alleged breach of the Credit Agreement between Dynotec and Transtar, a material element of Transtar's breach of contract claim. The dispute over the actual amount due, if any, is sufficient to deny summary judgment.

Therefore, Transtar's alleged claim for damages is subject to abatement and reduction, in whole or in part, by the Defendants' right of recoupment against any such damages because: (1) Dynotec provided credit to its customers for labor and replacement parts; (2) incurred additional expenses related to builder and support staff costs; and (3) Transtar has not properly calculated Dynotec's account for payments made, core returns and outstanding invoices owed to Dynotec. Dynotec produces evidence in support of its recoupment defense calculation and evidence directly disputing Transtar's calculation.

Plaintiff's Motion references federal tax liens assessed against Dynotec that are not relevant to this case or the Court's summary judgment analysis.

Consequently, there exists a genuine issue of material fact sufficient to deny summary judgment in Transtar's favor.

## II. STATEMENT OF FACTS

Dynotec and Transtar's relationship was a two-way street. In 2009, Dynotec executed a Transtar Account Application. (Tim Decl. ¶3). Transtar purchased transmission-related products from Dynotec, including remanufactured transmissions; and Dynotec purchased transmission-related components and parts from Transtar. (Tim Decl. ¶4). This reciprocal relationship of purchases and sales arising out of the same series of transactions between Transtar and Dynotec continued from 2009 to 2020. (Tim Decl. ¶5). Dynotec used the parts and components sold by Transtar to rebuild and/or manufacture transmissions that were delivered back to Transtar and sold as Transtar transmissions and related transmission products. (Tim Decl. ¶6). Additionally, Dynotec used the parts and components to rebuild and/or manufacture transmissions for customers of Dynotec. (Tim Decl. ¶6).

Beginning in 2012, Transtar sold and delivered parts and components to Dynotec that were defective. (Tim Decl. ¶7). As a result, Dynotec responded to hundreds of claims by end users due to Transtar's defective components. (Tim Decl. ¶7). Dynotec processed hundreds of warranty claims it received from its customers as a result of Transtar's defective components. (Tim Decl. ¶7 and Jody Decl. ¶3).

Dynotec notified Transtar of the defective parts and components on several occasions. (Tim Decl. ¶8 and Exhibit 1). Lundquist had numerous phone calls and email correspondence with Transtar representatives regarding the delivery of defective parts and components. (Tim Decl. ¶8 and Exhibit 1). On two separate occasions, Lundquist visited Transtar's plant locations to meet with Transtar's representatives to discuss the issues surrounding the defective components. (Tim Decl. ¶8 and Exhibit 2). Lundquist was assured by Transtar's representative that the issue was identified, contained, and Transtar would work with Dynotec to rectify the past problems. (Tim

Decl. ¶11). Unfortunately, that was not the case. Defective products continued to be shipped to Dynotec and the issues continued. (Tim Decl. ¶11 and Exhibit 1).

Transtar failed to honor written, express and/or implied warranties related to its defectively manufactured components and parts. (Tim Decl. ¶12). Consequently, Transtar's failure to honor its warranties resulted in further expense to Dynotec. (Tim Decl. ¶12 and Jody Decl. ¶4). In order to process each of its customer warranty claims, Dynotec incurred significant expenses. (Tim Decl. ¶12 and Jody Decl. ¶5).

On November 20, 2016, Transtar's predecessor, Transtar Industries, Inc. along with other affiliated and related entities, filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York. The consolidated case was known as *In re Transtar Industries, Inc.*, Case No. 1:16-bk-13253. (Tim Decl. ¶13). During the course of the Chapter 11 case, Transtar representatives encouraged Dynotec to continue to purchase parts and components from it. (Tim Decl. ¶13). Dynotec was repeatedly assured by those Transtar representatives authorized to make such representations that Transtar would allow Dynotec to continue to order parts and components as a means to work down the debt created by Transtar's failure to properly credit Dynotec's accounts for the defective components and repair work. (Tim Decl. ¶13).

Unfortunately, throughout the bankruptcy, Transtar continued to deliver defective components and failed to honor its warranties on the components it sold to Dynotec. (Tim Decl. ¶14). As a result of Transtar's failure to provide working components and its refusal to honor its warranties, Dynotec was forced to provide warranty credit to its customers. (Tim Decl. ¶14 and Jody Decl. ¶6).

The credits that Dynotec provided to its customers for their warranty claims were

exclusively based on Transtar's failing components. (Tim Decl. ¶15 and Jody Decl. ¶7). Dynotec provided warranty labor credits to its customers to cover the cost of labor and parts for replacing Transtar's defective components. (Jody Decl. ¶8). The overall amount of warranty labor credits that Dynotec provided to its customers was $298,552.19. (Jody Decl. ¶9 and Exhibit 3). Furthermore, Dynotec was obligated to purchase replacement parts for its customers. (Tim Decl. ¶16). Dynotec provided credit to its customers for the replacement parts necessary to repair the transmissions because of Transtar's defective components. (Jody Decl. ¶10). Dynotec purchased and credited replacement parts and components totaling $346,756.88 to its customers. (Jody Decl. ¶10 and Exhibit 3).

In the transmission industry, it is common practice for builders to be paid per unit assembled. (Tim Decl. ¶17). Because of the high volume of customer warranty claims, Dynotec was forced to incur additional expenses for paying its builders to repair, replace and rebuild the warranty transmissions. (Tim Decl. ¶17 and Jody Decl. ¶11). Dynotec would not have incurred these builder expenses but for Transtar's defective components and its failure to honor its warranties; instead the builders could have been building transmissions for other paying customers. (Tim Decl. ¶17). Dynotec's payout to its builders for transmissions containing defective Transtar components was $114,316.00. (Jody Decl. ¶11 and Exhibit 3).

Due to the high volume of warranty claims, Dynotec required its support staff to handle each claim. (Jody Decl. ¶12). If not for the defective components, the support staff would have performed their operational duties in other departments. (Jody Decl. ¶12). Dynotec's calculation of unnecessary expenses related to its support staff handling warranty claims directly related to Transtar's defective components is $243,794.40. (Jody Decl. ¶12 and Exhibit 3).

Throughout the duration of the relationship, Transtar assigned to Dynotec an account

representative. (Tim Decl. ¶18). After the bankruptcy, Transtar continuously changed the account representative assigned to the Dynotec account. (Tim Decl. ¶18). Due to Transtar's carousal of account representatives, Transtar repeatedly failed to make timely payment for Dynotec parts and services; properly credit Dynotec's account; and deliver core material appropriately. (Jody Decl. ¶14).

In the spreadsheet relied upon by Transtar ("**Transtar's Spreadsheet**")(Doc. 16-3), Transtar fails to account for payments made by Dynotec to Transtar for certain parts. (Jody Decl. ¶15). Dynotec made payment to Transtar for all parts ordered in 2020. (Jody Decl. ¶15 and Exhibit 4). Transtar's Spreadsheet includes 2020 parts that were already paid for by Dynotec. (Jody Decl. ¶15). Transtar received payment for these parts, and failed to proper credit Dynotec's account. (Jody Decl. ¶15).

Transtar's Spreadsheet also calculates an amount allegedly owed by Dynotec for cores and products returned to Dynotec. (Doc. #16-3, PageID# 394), (Jody Decl. ¶17). Transtar's Spreadsheet fails to account for credits already applied to Transtar's account for core returns and charges, and fails to account for returned cores that were damaged and unusable. (Jody Decl. ¶17). Additionally, in some instances, Transtar inappropriately delivered cores to Dynotec that should have been delivered to other third parties not associated with Dynotec. (Jody Decl. ¶17). Transtar claims that there are $324,891.27 outstanding in uncredited core charges. (Doc. #16-3, PageID# 394), (Jody Decl. ¶17). Dynotec provided credit memos to Transtar for core returns and charges. (Jody Decl. ¶17). Transtar failed to properly credit its account. (Jody Decl. ¶17). Consequently, the total amount of core charges that Dynotec disputes is $119,991.00. (Jody Decl. ¶17 and Exhibit 5).

Transtar improperly charged Dynotec for warranty work that was previously denied by

Dynotec. (Doc. #16-3, PageID# 414), (Jody Decl. ¶19). The warranty calculation provided by Transtar inaccurately depicts the amount of work approved and/or covered by Dynotec. (Jody Decl. ¶19). Dynotec properly denied $11,289.34 in labor charges that appear on Transtar's Spreadsheet. (Jody Decl. ¶19 and Exhibit 6).

Finally, in addition to the amount Transtar concedes is owed to Dynotec, there are five additional outstanding invoices owed to Dynotec. (Jody Decl. ¶21). The total additional amount is $17,950.00. (Jody Decl. ¶21 and Exhibit 7).

Due to the above, this case is not an open and shut breach of contract case as Plaintiff states in its Motion. There are issues of material fact that directly relate to the agreement of the parties and the damages arising out of any breach. Dynotec produces evidence here that results in a conflict of material fact that a jury must resolve, so the Court must accordingly deny Plaintiff's Motion.

### III. LAW AND ARGUMENT

#### a. Summary Judgment Standard

In summary judgment practice, the moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.* In deciding a motion for summary judgment, the Court must view the factual evidence and draw all reasonable inferences in favor of

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The Court should be mindful that material facts are only those that might affect the outcome of the suit. *Embassy Realty Investments, Inc. v. City of Cleveland*, 976 F. Supp. 2d 931, 938 (N.D. Ohio 2013). To determine what constitutes a genuine issue, the Court must decide whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party, or whether it is so one-sided that the movant must prevail as a matter of law. *Allan v. Pennsylvania Higher Ed. Assistance Agency*, 968 F.3d 567, 570 (6th Cir. 2020). The movant's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

Rule 56 provides important instructions to the court. The court must construe the evidence in the manner most favorable to the defendants (against whom the motion is directed) and may not grant the motion for summary judgment unless there is only one conclusion available from the evidence presented and that conclusion is adverse to the defendants. Fed. R. Civ. P. 56. When analyzed in the light most favorable to Defendants and in accordance with these procedural rules, requirements and obligations, it becomes abundantly clear that Plaintiff's Motion must be denied.

      b. **Genuine Issues of Material Fact Exist with Respect to the Amount Allegedly Owed to Transtar Precluding Summary Judgment in Favor of Transtar.**

Transtar alleges that it is entitled to judgment on its breach of contract claim because there is no genuine dispute of material fact surrounding the contract. (Doc. #16 at 3-4). Defendants disagree. The elements of breach of contract are (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) *damage or loss to the plaintiff resulting from the breach*. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (*Emphasis added*). Transtar fails to demonstrate that there is no genuine dispute of material fact as to any damage or loss resulting from an alleged breach. In fact, it is abundantly clear that a genuine dispute exists as to Transtar's calculation of damages, and the expected reduction, or potential elimination, of any damage through Defendants' right of recoupment. As shown below, Transtar materially miscalculates its damages on several levels, which leads to a genuine dispute of material fact. Because Dynotec has produced evidence here showing a genuine dispute of material fact that a jury must resolve, Plaintiff's Motion must be denied. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

      1. *Transtar is Not Entitled to Judgment—Dynotec's Right of Recoupment Reduces and/or Eliminates Transtar's Recovery.*

As set forth in its Answer, Dynotec is entitled to reduce Transtar's recovery by its right of recoupment. (Doc. #6 at ¶¶ 47-63). A recoupment defense is available to reduce the plaintiff's amount demanded, up to the full amount, where the recoupment arises from the same transaction as the plaintiff's claim. *Lynx Services, Ltd. v. Horstman*, 182 F. Supp. 3d 757, 766 (N.D. Ohio 2016). Recoupment allows the defendant to defend against the claim by asserting, up to the full amount, the defendant's own claim against the plaintiff growing out of the same transaction. *RL BB Acquisition, LLC v. Bridgemill Commons Development Group, LLC*, 754 F.3d 380, 387 (6th

Cir. 2014); *see also In re Unimet Corp.*, 1991 WL 325160, *3 (N.D. Ohio 1991) ("[recoupment] is asserted to prove that because of matters arising out of the transaction sued on, the defendant is not liable in full for the plaintiff's claim.").

Defendants' recoupment claim significantly reduces, or potentially eliminates, Transtar's claim for damages. Defendants' recoupment defense is calculated as follows:

| Warranty Labor Credit: | $298,552.19 |
|---|---|
| Replacement Parts: | $346,756.88 |
| Dynotec Builder Pay: | $114,316.00 |
| Warranty Support Staff: | $243,794.77 |
| Total: | $1,003,419.77 |

(Jody Decl. ¶¶9-12 and Exhibit 3).

Accordingly, summary judgment is inappropriate because Dynotec can show a genuine dispute of material fact allowing it to reduce any alleged damage by the actual amount owed to Dynotec by Transtar.

        A.    <u>Dynotec Can Recoup the Amounts Paid for Warranty Labor Credits Provided to Its Customers.</u>

Transtar continuously failed or refused to honor the express and implied warranties on the parts it sold to Dynotec. As a direct result of Transtar's failure to provide working components and its refusal to honor its warranties, Dynotec was forced to provide warranty labor credit to its customers. Dynotec provided warranty labor credits to its customers to cover the cost of labor and parts for replacing Transtar's defective components. The overall amount of warranty labor credits that Dynotec provided to its customers was $298,552.19. Accordingly, Dynotec's right of recoupment for the warranty labor credits arising from the same transaction between the parties

serves as a reduction by $298,552.19 of the damages sought by Transtar.

          B.     <u>Dynotec Can Recoup the Amounts Paid for Replacement Parts.</u>

Transtar's claim must be reduced by the amount paid by Dynotec for replacement parts to repair its customers' transmissions because of defective components provided by Transtar. Because of Transtar's defective components, Dynotec was obligated to purchase replacement parts for its customers. Due to the failure of Transtar's components, Dynotec purchased replacement parts for its customers totaling $346,756.88, due to its own customer warranty. Accordingly, Dynotec's right of recoupment for the replacement parts arising from the same transaction between the parties serves as a reduction by $346,756.88 of the damages sought by Transtar.

          C.     <u>Dynotec Can Recoup the Amounts Paid for Builder Costs.</u>

An additional element of Dynotec's right of recoupment is the amount that Dynotec paid its own builders to repair, replace, and rebuild transmissions due to Transtar's defective components. Transmission builders are paid per unit. As such, Dynotec incurred costs for its builders to repair, replace, and rebuild transmissions that were subject to Dynotec's own warranty. Because of the high volume of customer warranty claims, Dynotec incur additional expenses for paying its builders to repair, replace and rebuild the warranty transmissions. Dynotec additional payout to builders was $114,316.00. Accordingly, Dynotec's right of recoupment for its builder costs serves as a reduction by $114,316.00 of the damages sought by Transtar.

          D.     <u>Dynotec Can Recoup the Amounts Paid for Support Staff to Handle Warranty Claims Directly Related to Transtar's Defective Components.</u>

The final element of Dynotec's right of recoupment are costs incurred for Dynotec's support staff. Due to high volume of warranty claims from its customers, directly related to Transtar's defective components, Dynotec paid its support staff to handle the warranty claims. If

not for the high volume of warranty claims, the support staff would have performed their operational duties in other departments. As a result, Dynotec's claim for support staff expenses occurs under the same transaction with Transtar and accordingly must reduce Transtar's claim by $243,794.40.

Because Dynotec has produced evidence of its right of recoupment, there is a genuine dispute of material fact regarding Transtar's claim of recovery. Therefore, the Court must deny Plaintiff's Motion.

> 2. *Transtar is Not Entitled to Judgment—There Exists a Genuine Issue of Material Fact as To Transtar's Calculation of Its Claimed Damages.*

Dynotec denies and contests Transtar calculation of damages as shown in Transtar's Spreadsheet. Transtar materially miscalculates its damages on several levels, including: payments of parts/products owed to it; core and products returned; and Transtar's warranty labor. Finally, in addition to the amount Transtar admits is owed to Dynotec, there are five outstanding invoices owed to Dynotec. Transtar's miscalculation leads to a genuine dispute of material fact.

> A. <u>Transtar Miscalculates the Amount Owed to It for Products Allegedly Provided to Dynotec and Fails to Credit Dynotec for 2020 Payments.</u>

Transtar miscalculates the amount owed to it by Dynotec in its calculation of damages. Transtar fails to account for payments made by Dynotec to Transtar for certain parts. Dynotec made payment to Transtar for all parts purchased in 2020. Transtar's Spreadsheet includes 2020 parts that were already paid for by Dynotec. Transtar failed to properly account for Dynotec payments and as a result Transtar's calculation of damages is severely overstated. Because Transtar's calculation of damages fails to account for Dynotec's 2020 payments, a genuine issue of material fact exists.

### B. Transtar's Claim Should Be Reduced Because Transtar Improperly Calculated Core Charges.

Transtar also miscalculates the amounts allegedly owed by Dynotec for cores and products returned to Dynotec. Transtar's calculation of core charges fails to account for credits already applied to Transtar's account by Dynotec, nor does it account for Transtar's returned cores that were damaged or unusable. Transtar neglected to remove such credit from its calculation. This activity is consistent with Transtar's continued failure to properly apply credits due to the carousel of account representatives in charge of the Dynotec account. Additionally, in some instances, Transtar delivered cores to Dynotec that were unusable or improperly delivered to Dynotec.

Transtar claims that there are $324,891.27 outstanding in uncredited core charges. Transtar calculation can be directly rebutted by credit memos that Dynotec provided to Transtar. These credits were not properly deducted by Transtar. Transtar did not reject Dynotec's credit memos, nor did it raise any issue with such memos at the time. The total amount of core charges that Transtar failed to properly credit is $119,991.00. As a result, Transtar's recovery must be reduced by the amount that Transtar improperly charged for core: $119,991.00.

### C. Transtar's Claim Should Be Reduced Because Transtar Improperly Calculated Warranty Labor Charges.

Transtar improperly charged Dynotec for warranty work that was previously denied by Dynotec. The warranty calculation provided by Transtar inaccurately depicts the amount of work approved and/or covered by Dynotec. As such, Transtar again miscalculates the amount owed to it. The total amount of labor charges denied by Dynotec is $11,289.34.

### D. Five Outstanding Invoices Are Owed by Transtar to Dynotec.

Lastly, in addition to the amount Transtar concedes is owed to Dynotec, there are five additional outstanding invoices owed to Dynotec totaling $17,950.00. As a result, Transtar's claim

should be reduced by said amount.

Dynotec has presented evidence sufficient to show a genuine dispute of material fact regarding Transtar's breach of contract claim and its calculation of amounts owed. As a result, Plaintiff's Motion must be denied.

> 3. *Transtar is Not Entitled to Judgment as a Matter of Law on its Unjust Enrichment Claim*

Unjust enrichment and breach of contract are mutually exclusive theories of recovery. *See McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) ("Because unjust enrichment is a quasi-contractual remedy, however, a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation."); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009).

A claim for unjust enrichment arises from a contract implied in law, or quasi contract. *F.D.I.C. v. Jeff Miller Stables*, 573 F.3d 289, 295 (6th Cir. 2009). Unjust enrichment is an equitable doctrine that allows a party to pursue the reasonable value of services rendered upon another party when a benefit is conferred without an exchange of just compensation. *Cheers Sports Bar & Grill v. DIRECTV, Inc.*, 563 F. Supp. 2d 812, 819 (N.D. Ohio 2008) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 527 (1938)). A claim for unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality. *Id.* (citing *Resource Title Agency, Inc. v. Morrreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 773 (N.D. Ohio 2004)). Here, Transtar is suing under an express contract and has not alleged that the contract was the result of fraud, bad faith, or illegality, so its unjust enrichment claim cannot be plead in the alternative. Accordingly, Transtar cannot be awarded a judgment based upon both a breach of a contract and unjust enrichment. Plaintiff's Motion requests judgment on both.

Defendants acknowledge the existence of a valid contract and, therefore, summary judgment in favor of Plaintiff for its claim of unjust enrichment is inappropriate.

### 4. Dynotec's Federal Tax Lien Assessment is Not Relevant to this Case.

Plaintiff's Motion references federal tax liens assessed against Dynotec. (Doc. #16-3, PageID# 81). Dynotec's federal tax lien matter is not relevant to Plaintiff's claims or the Court's summary judgment analysis.

### IV. CONCLUSION

For the foregoing reasons, there are genuine disputes of material fact to be resolved in this matter and Defendants have presented sufficient evidence for the Court to deny Plaintiff's Motion. Accordingly, Transtar's Motion for Summary Judgment should be denied in its entirety.

Respectfully Submitted,

*/s/ Brian F. Kampman*
STEPHEN M. BALES (0003380)
BRIAN F. KAMPMAN (0092386)
Ziegler Metzger LLP
1111 Superior Avenue, Suite 1000
Cleveland, OH 44114
(216) 781-5470 | (216) 781-0714
sbales@zieglermetzger.com
bkampman@zieglermetzger.com
*Attorneys for Defendants,*
*Tim Lundquist and Dynotec Industries*

## LOCAL RULE 7.1(f) CERTIFICATION

The undersigned certifies that this civil action is assigned to the Standard Track and the forgoing Brief in Opposition to Plaintiff's Motion for Summary Judgment complies with the page limitations for Standard Track cases set forth in Loc. R. 7.1(f).

*/s/ Brian F. Kampman*
Brian F. Kampman (0092386)

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2021, a copy of the foregoing was filed electronically and serviced upon all parties via the Court's ECF system.

*/s/ Brian F. Kampman*
Brian F. Kampman (0092386)
